[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 08-16505
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 12, 2009
THOMAS K. KAHN
CLERK

Agency Nos. A079-496-057,
A079-496-054

JUAN DIEGO TRUJILLO-CASTRO,
JUAN JOSE TRUJILLO,
CAMILO TRUJILLO,
PATRICIA ARBELAEZ,

                                                            Petitioners,

versus

U.S. ATTORNEY GENERAL,

                                                            Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(August 12, 2009)

Before CARNES, WILSON and FAY, Circuit Judges.

PER CURIAM:

Through counsel, Juan Diego Trujillo-Castro, his wife, and two sons ("petitioners"), natives and citizens of Colombia, petition this Court for review of a decision by the Board of Immigration Appeals ("BIA") denying their motion to reopen, in which they sought to adjust their status. The BIA denied the motion on the ground that, because the petitioners overstayed beyond the voluntary departure period, they became statutorily ineligible to adjust their status. On appeal, the petitioners primarily argue that they were never notified that the grant of voluntary departure effectively reduced their time to file the motion to reopen. For the reasons set forth below, we deny the petition.

## I.

In August 2001, Trujillo-Castro filed an application for asylum, listing his wife, Patricia Arbelaez, and two sons, Camilo Trujillo and Juan Jose Trujillo, as derivative beneficiaries. In October 2004, the government filed a notice to appear, alleging that the petitioners – originally admitted to the United States in August 2000 as non-immigrant visitors – were removable for remaining in the country for a time longer than permitted, pursuant to INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B).

Following a removal hearing on the application, an immigration judge ("IJ") found that the petitioners had not met their burden of proof with respect to their request for asylum, withholding of removal, and relief under the United Nations

2

Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment. However, the IJ granted the petitioners' request for voluntary departure and entered an alternate order of removal, which would take effect if the petitioners overstayed beyond the voluntary departure period.

On August 7, 2006, the BIA dismissed the petitioners' appeal, agreeing with the IJ that they were not entitled to relief from removal. However, the BIA permitted the petitioners to voluntarily depart the country within 30 days of its order, i.e., by September 6, 2006. The BIA notified the petitioners in its order that, if they failed to depart within that time period, the IJ's alternate order of removal would take effect, and they would be subject to certain penalties, including ineligibility for relief under INA § 245 for a period of ten years. On September 5, 2006, the petitioners filed a petition for review in this Court of the BIA's decision.

On November 6, 2006, the petitioners filed a motion to reopen in the BIA, seeking adjustment of status, pursuant to INA § 245(i), 8 U.S.C. § 1255(i), on the ground that an employment-based I-40 Petition had been filed on Trujillo-Castro's behalf three days earlier. The petitioners noted that the motion to reopen was timely, since it had been filed within 90 days of the BIA's decision. The petitioners also noted that they had previously filed a petition for review in order "to toll the Voluntary Departure," but they had since withdrawn the petition "in

3

order to move the [BIA] to reopen the Removal Proceedings."[1]

The government opposed the motion to reopen, arguing, inter alia, that the petitioners were ineligible to adjust their status for a period of ten years because they overstayed beyond the voluntary departure period. In this respect, the government argued that our decision in Ugokwe v. U.S. Att'y Gen., 453 F.3d 1325 (11th Cir. 2006), "which holds that the filing of a motion to reopen tolls the period of voluntary departure, is . . . inapplicable because the [petitioners] filed the motion to reopen with the Board after the voluntary departure period expired."

On January 11, 2007, the BIA granted the motion to reopen, finding that the petitioners were prima facie eligible for adjustment of status. The government filed a motion for reconsideration, repeating its argument that the petitioners were "statutorily barred from adjustment based on their overstaying the grant of voluntary departure from the Board." On October 17, 2008, the BIA granted the government's motion, finding that it had previously committed an error of law and that, under INA § 240B(d), 8 U.S.C. § 1229c(d), the petitioners were "presently statutorily ineligible for adjustment of status as a result of [their] failure to depart the United States prior to the expiration of [the] 30-day period of voluntary departure." The BIA noted that the case was not controlled by Ugokwe or the

---

[1] We subsequently granted the petitioners' motion to voluntarily dismiss the September 5, 2006 petition for review.

4

Supreme Court's recent decision in <u>Dada v. Mukasey</u>, 554 U.S. __, 128 S.Ct. 2307, 171 L.Ed.2d 178 (2008), because the petitioners did not file their motion to reopen before the termination of the voluntary departure period. Accordingly, the BIA vacated its January 11, 2007 decision and denied the petitioners' motion to reopen. The petitioners then filed the instant petition for review.

## II.

As just discussed, presently before us is a petition for review of the BIA's October 17, 2008 decision denying the petitioners' motion to reopen on the ground that they were statutorily ineligible for adjustment-of-status relief. We retain jurisdiction over such non-discretionary, legal determinations. <u>See</u> <u>Mejia Rodriguez v. U.S. Dep't of Homeland Sec.</u>, 562 F.3d 1137, 1142-45 (11th Cir. 2009) (holding that "<u>non-discretionary</u> statutory eligibility decisions" fall outside the scope of the jurisdiction-stripping provision in INA § 242(a)(2)(B), 8 U.S.C. § 1252(a)(2)(B)). "We review the denial of a motion to reopen for an abuse of discretion." <u>Chacku v. U.S. Att'y Gen.</u>, 555 F.3d 1281, 1286 (11th Cir. 2008). It is within the BIA's discretion to deny a motion to reopen if the alien fails "to establish a prima facie case of eligibility for adjustment of status." <u>Id.</u> (quotation and alteration omitted). As mentioned above, determining whether an alien is statutorily eligible for such relief presents a question of law, which we review de novo. <u>See</u> <u>Lin v. U.S. Att'y Gen.</u>, 555 F.3d 1310, 1314 (11th Cir. 2009) ("We

5

review <u>de novo</u> the BIA's . . . legal conclusions."); <u>see also</u> <u>Alvarez Acosta v. U.S Att'y Gen.</u>, 524 F.3d 1191, 1197 n.14 (11th Cir. 2008) (describing as a "legal conclusion" the BIA's determination that a petitioner was ineligible for adjustment of status).

The INA "guarantees to each alien the right to file 'one motion to reopen proceedings . . . .'" <u>Dada</u>, 554 U.S. at __, 128 S.Ct. at 2316 (quoting INA § 240(c)(7)(A), 8 U.S.C. § 1229a(c)(7)(A)). The motion "shall state the new facts that will be proven at a hearing to be held if the motion is granted . . . ." INA § 240(c)(7)(B), 8 U.S.C. § 1229a(c)(7)(B); <u>see</u> <u>Dada</u> 554 U.S. at __, 128 S.Ct. at 2316 ("To qualify as new, the facts must be material and of the sort that could not have been discovered or presented at the former hearing . . . .") (quotations and citations omitted). Subject to exceptions not relevant here, the alien must file the motion to reopen within 90 days of the entry of an administrative order of removal. INA § 240(c)(7)(C)(i), 8 U.S.C. § 1229a(c)(7)(C)(i). There is no dispute in this case that the petitioners timely filed the motion to reopen.

The INA also provides that, as an alternative to the entry of a formal removal order, the Attorney General may, under certain circumstances, permit an alien to voluntarily depart the United States at his own expense. INA § 240B(a)(1), (b)(1), 8 U.S.C. § 1229c(a)(1), (b)(1). However, if the alien fails to depart within the prescribed time period, he becomes statutorily ineligible for

6

adjustment of status under INA § 245, 8 U.S.C. § 1255, for a period of ten years. INA § 240B(d)(1)(B), 8 U.S.C. § 1229c(d)(1)(B). The order permitting the alien to depart voluntarily must inform him of this penalty. INA § 240B(d)(3), 8 U.S.C. § 1229c(d)(3).

### III.

On August 7, 2006, the BIA authorized the petitioners to voluntarily depart the country 30 days later, i.e., by September 6, 2006. In its order, the BIA fulfilled its statutory obligation to notify the petitioners that, if they failed to depart by that date, they would be ineligible for relief under INA § 245 for a period of ten years. Despite being so informed, the petitioners now contend that the BIA should have also notified them that their time to file a motion to reopen was effectively reduced from 90 to 30 days.[2] However, the BIA informed the petitioners of the critical fact — that overstaying would render them ineligible for adjustment-of-status relief. Nothing required the BIA to go further and inform the petitioners of the obvious consequence that followed, namely, that if they wanted to adjust their status via a motion to reopen, they would have to file the motion before the expiration of the voluntary departure period.

---

[2] We note that, even if the BIA had informed the petitioners of this fact, it is doubtful that it would have made a difference, as the basis of the motion to reopen was an I-40 Petition filed on November 3, 2006, which was well after the expiration of the 30-day voluntary departure period.

Moreover, our case law at the time also should have put the petitioners' attorney on notice that any motion to reopen had to be filed before the expiration of the voluntary departure period. Slightly over one month before the BIA's August 2006 decision, we decided Ugokwe, which expressly confronted the "interaction between rules pertaining to voluntary departure and [the] right under the INA to file a motion to reopen." 453 F.3d at 1328. Specifically, and as the Supreme Court later framed the issue, Ugokwe addressed the fact that a voluntary-departure recipient who seeks to file a motion to reopen "has two poor choices: The alien can remain in the United States to ensure the motion to reopen remains pending, while incurring statutory penalties for overstaying the voluntary departure date; or the alien can avoid penalties by prompt departure but abandon the motion to reopen."[3] Dada, 554 U.S. at __, 128 S.Ct. at 2311; see Ugokwe, 453 F.3d at 1328-31. In order to reconcile this tension, this Court in Ugokwe held that a timely motion to reopen, filed before the expiration of the voluntary departure deadline, tolled the voluntary departure period. 453 F.3d at 1329-31. Thus, a simple review of our most recent case law on the issue would have revealed that any motion to reopen had to be filed before the termination of the voluntary departure period.[4]

---

[3] Pursuant to regulation, departing the country has the effect of withdrawing a pending motion to reopen. 8 C.F.R. § 1003.2(d).

[4] In their motion to reopen, the petitioners asserted that the petition for review filed on September 5, 2006 – one day before the voluntary departure deadline – tolled the voluntary

The Supreme Court's subsequent decision in Dada is similarly of little assistance to the petitioners. In that case, the Supreme Court addressed the same issue in Ugokwe, but rather than authorize tolling the voluntary departure period, the Court "h[e]ld that, to safeguard the right to pursue a motion to reopen for voluntary departure recipients, the alien must be permitted to withdraw, unilaterally, a voluntary departure request before expiration of the departure period . . . ." Dada, 554 U.S. at __, 128 S.Ct. at 2319. The Court explained that this would give the alien "the option to either abide by the terms, and receive the agreed-upon benefits, of voluntary departure; or, alternatively, to forego those benefits and remain in the United States to pursue an administrative motion." Id. at __, 128 S.Ct. at 2319-20.

Relying on Dada, the petitioners contend that, even though their motion to reopen was filed after the expiration of the voluntary departure period, it effectively revoked their voluntary departure request "since there [was] no adequate notice that the alien would loose [sic] the right to a motion to reopen."[5]

departure period. However, the petitioners do not raise this argument on appeal and have therefore abandoned it. See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) ("When an appellant fails to offer argument on an issue, that issue is abandoned.").

[5] Notably, the petitioners do not contend that their September 5, 2006 petition for review – filed within the voluntary departure period – constituted a unilateral withdrawal of their voluntary departure request under Dada; instead, as discussed below, the petitioners rely solely on 8 C.F.R. § 1240.26(i) to advance such an argument. Thus, they have abandoned any such contention, see Sepulveda, 401 F.3d at 1228 n.2, and we therefore do not address whether the act of filing a petition for review was sufficient to withdraw the petitioners' request for voluntary departure under

9

As explained above, however, the petitioners' notice argument is unpersuasive, and, furthermore, <u>Dada</u> expressly requires that the motion to reopen be filed within the voluntary departure period.  <u>See</u> 554 U.S. at __, 128 S.Ct. at 2311 ("[W]e conclude the alien must be permitted an opportunity to withdraw the motion for voluntary departure, <u>provided the request is made before the departure period expires</u>.") (emphasis added).

The petitioners next argue that, under 8 C.F.R. § 1240.26(i), the September 5, 2006 petition for review "served to withdraw their request for voluntary departure . . . ."  That regulation provides, in pertinent part: "If, prior to departing the United States, the alien files a petition for review . . . , any grant of voluntary departure shall terminate automatically upon the filing of the petition . . . and the alternate order of removal . . . shall immediately take effect."  8 C.F.R. § 1240.26(i).  However, this regulation took effect on January 20, 2009, and the Department of Justice expressly declined to give it retroactive effect.  Voluntary Departure: Effect of a Motion to Reopen or Reconsider or a Petition for Review, 73 Fed. Reg. 76,927, 76,936 (Dec. 18, 2008).  Thus, the regulation does not govern this case.  Although the petitioners acknowledge this fact in their reply brief, they nonetheless suggest that we should apply it in light of the alleged lack of notice

---

Dada, <u>cf.</u> <u>Mahmood v. Holder</u>, __ F.3d __, No. 07-5656, manuscript op. at 7 (2d Cir. June 25, 2009) ("<u>Dada</u> did not answer the question of precisely what an alien must do to withdraw from voluntary departure.").

they received regarding the time to file their motion to reopen. As discussed above, however, the petitioners' notice argument is unavailing.

Finally, the petitioners argue in their reply brief that the BIA's initial January 11, 2007 decision "reopening their case effectively vacated their removal order stemming from the voluntary departure and as such it also disposed the triggering of the bars pursuant to INA § 240B(d)." However, because the petitioners raise this argument for the first time in their reply brief, we need not address it. See United States v. Levy, 379 F.3d 1241, 1244 (11th Cir. 2004) (stating that this Court "repeatedly has refused to consider issues raised for the first time in an appellant's reply brief"). In any event, the argument is unpersuasive because the BIA's January 11, 2007 decision upon which the petitioners rely was subsequently vacated by the BIA's October 17, 2008 decision.

In sum, the petitioners have not offered any persuasive argument excusing their failure to voluntarily depart by the prescribed deadline. As a result, they became statutorily ineligible for adjustment of status, pursuant to INA § 240B(d)(1)(B), 8 U.S.C. § 1229c(d)(1)(B), and the BIA therefore did not abuse its discretion by denying their motion to reopen. See Chacku, 555 F.3d at 1286. Accordingly, we deny the petition.

**PETITION DENIED.**

11