[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-14273

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 4, 2011
JOHN LEY
CLERK

D. C. Docket No. 08-20273-CV-ILK

ERNESTO ALONSO MEJIA RODRIGUEZ,

Plaintiff-Appellant,

versus

U.S. DEPARTMENT OF HOMELAND SECURITY,
U.S. CITIZENSHIP AND IMMIGRATION SERVICES,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(January 4, 2011)

Before CARNES, KRAVITCH and SILER,[*] Circuit Judges.

_____

[*] Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting by designation.

PER CURIAM:

The Department of Homeland Security (DHS) can grant temporary protective status (TPS) to an otherwise removable alien unable to return to his native country due to ongoing armed conflict, environmental disasters, or other extraordinary and temporary conditions.[1]  8 U.S.C. § 1254a(b)(1)(B)(i).  An alien who has been convicted of two or more misdemeanors, however, is ineligible for TPS.  8 C.F.R. § 1244.4.  Ernesto Alonzo Mejia Rodriguez (Mejia), a native and citizen of Honduras, was denied renewal of his TPS in 2005 when the DHS's Citizenship and Immigration Service (CIS) concluded that he was ineligible because of his misdemeanor convictions.  Mejia filed a complaint in federal court seeking a declaratory judgment that his 1986 guilty plea in state court to possession of marijuana and driving with a suspended license was not a "conviction."  The district court dismissed the complaint for lack of jurisdiction, but this court reversed and remanded for consideration of the merits.  *Mejia Rodriguez v. U.S. Dep't of Homeland Sec.*, 562 F.3d 1137 (11th Cir. 2009).

This case is now before us a second time after the district court denied Mejia's claim on the merits.  We must now decide whether a guilty plea and a finding of guilt, with a sentence of time served, qualifies as a "conviction" under 8

---

[1] We discussed TPS in detail in our previous decision.  *Mejia Rodriguez v. U.S. Dep't of Homeland Sec.*, 562 F.3d 1137 (11th Cir. 2009).  We need not recount it here.

U.S.C. § 1101(a)(48). We hold that it does.

## I.

Mejia entered the United States in November 1980 on a B-2 visa. He overstayed his visa and was ultimately ordered to be deported. Mejia applied for and received TPS after Hurricane Mitch struck Honduras. He was permitted to renew his status from 1999 through 2004.

In 2005, however, the CIS rejected Mejia's request for renewal, citing several prior convictions as the basis for his ineligibility. All of the prior convictions, except two, were later vacated. The remaining convictions on which the CIS relied were a 1985 turnstile-jumping conviction, which Mejia concedes is a conviction under § 1101(a)(48), and the 1986 "conviction" at issue here.

In 1986, Mejia was charged in state court with marijuana possession and driving with a suspended license. According to the state-court records,[2] Mejia's drug offense was disposed of by a "guilty plea, finding of guilty, and credit for time served."[3]

We must decide whether this 1986 plea satisfies the definition of

_____

[2] Mejia also submits an untitled state-court document with various court stamps on it. The document is illegible and we will not guess at what it represents.

[3] Mejia was arrested in January and the state court disposed of the case in July, but as counsel stated at oral argument, we do not know how long Mejia was in custody.

"conviction." We review an issue involving statutory interpretation *de novo*, *Ferguson v. U.S. Att'y Gen.*, 563 F.3d 1254, 1269 (11th Cir. 2009), *cert. denied*, 130 S.Ct. 1735 (2010), but we will defer to the agency's interpretation "if it is reasonable and does not contradict the clear intent of Congress." *Quinchia v. U.S. Att'y Gen.*, 552 F.3d 1255, 1258 (11th Cir. 2008). If the intent of Congress is clear, it controls, but where a statute is silent or ambiguous, the question is whether the agency's interpretation is based on a permissible construction of the statute. *See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43.

Section 1101(a)(48) defines a "conviction" as

a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where - (i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

8 U.S.C. § 1101(a)(48)(A). Thus, a "conviction" can be either (1) a formal judgment of guilt, or (2) if adjudication of guilt was withheld, a sufficient finding of guilt and the imposition of punishment or restraint on liberty. Although Mejia argues that the second prong of § 1101(a)(48)(A) requires there to have been some form of punishment imposed, this case is not one in which adjudication was withheld. We will not, as counsel suggests, simply assume adjudication was withheld because there was no formal adjudication of guilt. Instead, we conclude

4

that because the state court did not expressly withhold adjudication in the 1986 case, only the first prong of § 1101(a)(48)(A) applies here.[4] *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) ("Canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise . . . ."). The only question here, then, is whether Mejia's guilty plea resulted in a formal judgment of guilt.

## II.

Before 1996, the immigration laws did not provide a statutory definition of "conviction." To provide consistency and uniformity, the Board of Immigration Appeals (BIA) looked to whether a court had adjudicated the defendant guilty or had entered a formal judgment of guilt. *See Matter of Ozkok*, 19 I. & N. Dec. 546 (BIA 1988). Congress then enacted IIRIRA, which added § 1101(a)(48) and the definition of conviction. According to the Congressional Conference Committee Report (the Report), § 1101(a)(48) was designed to "deliberately broaden[] the scope of the definition of 'conviction' beyond that adopted by the Board of

---

[4] By contrast, Mejia's 1989 resisting-arrest charge, which was later vacated, appears in the record as "conviction with community service." In another state-court record, charges for obstruction were disposed of by "conv-comm service." This same state-court record lists the 1986 charges with a disposition of "credit time served." Additionally, the state-court records of the 1985 turnstile-jumping conviction show a disposition of "finding of guilt, withhold adjudication with 25 hours community service and $25 court cost." After reviewing these state court records, we are convinced that the state court did not withhold adjudication on the 1986 charges.

5

Immigration Appeals in Matter of Ozkok, 19 I&N Dec. 546 (BIA 1988)." H.R.

Rep. No. 104-828 (1996), 1996 WL 563320, at *224. As the Report further

explained,

> [t]his new provision . . . clarifies Congressional intent that even in cases where adjudication is 'deferred,' the original finding or confession of guilt is sufficient to establish a 'conviction' for purposes of the immigration laws. In addition, this new definition clarifies that in cases where immigration consequences attach depending upon the length of a term of sentence, any court-ordered sentence is considered to be 'actually imposed,' including where the court has suspended the imposition of the sentence."

*Id.*

Importantly, the definition of conviction under § 1101(a)(48)(A) requires a

"formal judgment of guilt" instead of a formal adjudication. The Second, Third,

and Fifth Circuits have defined "formal judgment of guilt" by drawing an analogy

to Federal Rule of Criminal Procedure 32(k)(1). *Singh v. Holder*, 568 F.3d 525,

530 (5th Cir. 2009) (citing *Puello v. Bureau of Citizenship and Immigration Servs.*,

511 F.3d 324, 329 (2d Cir. 2007); *Perez v. Elwood*, 294 F.3d 552, 562 (3d Cir.

2002)). According to Rule 32(k)(1), "[i]n the judgment of conviction, the court

must set forth the plea, the jury verdict or the court's findings, the adjudication,

and the sentence." Fed. R. Crim. P. 32(k)(1). Thus, to establish a conviction for

immigration purposes, a court must accept a guilty plea or jury verdict, make an

adjudication, and impose a sentence. We agree with our sister circuits that this

6

approach makes sense and thus we adopt the same analogy.

Here, Mejia entered a guilty plea, the court made a finding of guilt, and it imposed a sentence of time served. The remaining questions before us, then, are (1) whether a finding of guilt qualifies as an adjudication, and (2) whether time served qualifies as a sentence under Rule 32(k)(1).

Mejia argues that a mere finding of guilt cannot constitute an adjudication. But we have more than a mere finding in this case. The word "adjudication" means to resolve a dispute or decide a case.[5] *Black's Law Dictionary* 43 (9th Ed. 2009). Thus, to determine whether there has been an adjudication, we look to the finality of the proceedings. *See Pino v. Landon*, 349 U.S. 901 (1955). For Mejia, the evidence of the disposition is the state-court clerk's certification showing a "guilty plea, finding of guilt, time served." The finding of guilt when coupled with some form of sentence – time served – brings finality to the case and thus establishes an adjudication. *See Corey v. United States*, 375 U.S. 169, 174 (1963) (noting that "the sentence is the judgment").

Mejia cites *Griffiths v. INS*, 243 F.3d 45 (1st Cir. 2001), to support his argument that he was not convicted of the 1986 charges. In *Griffiths*, the defendant

---

[5] We generally give words their ordinary meaning. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993) (("Courts properly assume, absent sufficient indication to the contrary, that Congress intends the words in its enactments to carry their ordinary, contemporary, common meaning.") (internal quotation marks omitted)).

7

had been convicted of a firearms offense and sentenced to a six-month suspended sentence and one year of probation. 243 F.3d at 48. After he served his term of probation, his conviction was vacated and the state filed lesser charges against him. When Griffiths pleaded guilty to the new charges, the state court found him guilty and placed the charges "on file," but it did not impose any additional punishment. *Id.* Griffiths challenged his subsequent deportation order on the ground that he had not been "convicted." *Id.* at 49. The First Circuit agreed. The court noted that under Massachusetts law, the "guilty-filed" procedure permitted the state court to suspend the adjudicative process. The First Circuit concluded that although there was a finding of guilt, there was no formal judgment of guilt under § 1101(a)(48) because a finding of guilt alone was insufficient. *Id.* at 52-53. The court determined that the state court withheld adjudication and, under the second provision of § 1101(a)(48), there was no conviction because the state records did not show whether the state-court judge had imposed some form of punishment. *Id.* at 54.

Because *Griffiths* concerned the adjudication withheld provision, we find the First Circuit's reasoning inapposite. Nor do we believe it offers the support Mejia needs. *Griffiths* analyzes the second provision, where adjudication was withheld. But as we have explained, this analysis does not apply here because there is no

8

indication that the state court withheld adjudication. Moreover, *Griffiths* did not exclude the possibility that a guilty-filed disposition could qualify as a conviction if the facts showed that the state court had imposed some punishment, even if that punishment was a prior probationary term. Rather, the court remanded to the BIA for further factfinding on the issue of punishment. 243 F.3d at 55.

Mejia also argues that time served is not a sentence because, under Florida law, time served is not a term of imprisonment. But whether a prior offense qualifies as a conviction under § 1101(a)(48) is a question of federal, not state, law. *United States v. Maupin*, 520 F.3d 1304, 1307 (11th Cir. 2008); *see also Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103, 119 (1983) ("[I]n the absence of a plain indication to the contrary . . . it is to be assumed when Congress enacts a statute that it does not intend to make its application dependent on state law." (citation and quotation marks omitted)). And the purpose of enacting § 1101(a)(48)(A) was to "creat[e] a uniform definition of conviction that is no longer dependent on the vagaries of state law." *Resendiz-Alcarez v. U.S. Att'y Gen.*, 383 F.3d 1262, 1269 (11th Cir. 2004).

In *United States v. Anderson*, 328 F.3d 1326 (11th Cir. 2003), this court held that when a defendant pleaded nolo contendere and the court withheld adjudication, a sentence of time served qualified as "punishment" under

§ 1101(a)(48). Although the question arose in the context of a sentencing-guideline issue, the court relied on the definition of conviction in § 1101(a)(48) to explain its holding. *Id.* at 1328.

Although *Anderson* addressed the second provision of § 1101(a)(48), we believe *Anderson*'s reading of the statute is sound, and we conclude that it controls the outcome of this case. Under federal law, time served qualifies as a sentence under Rule 32(k)(1) and can establish a formal judgment of guilt under § 1101(a)(48). We again find support for this holding in the Supreme Court's pronouncement that "[f]inal judgment in a criminal case . . . means sentence. The sentence is the judgment." *Corey*, 375 U.S. at 174 (citation and quotation marks omitted).

## III.

In this case, the state court accepted Mejia's plea, made a "finding of guilt," and imposed a sentence of time served. This satisfies § 1101(a)(48)'s definition of a formal judgment of guilt. Accordingly, we conclude that the 1986 case resulted in a conviction for immigration purposes. The district court properly denied the motion for declaratory judgment.

**AFFIRMED.**

10